UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN BERNARD CRAWFORD, #201697,

    Petitioner,

                                        Civil No: 05-CV-73051
                                        Honorable Denise Page Hood
                                        Magistrate R. Steven Whalen

v.

SHIRLEY HARRY,

    Respondent.
_____/

**OPINION & ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

    Petitioner, Kevin Bernard Crawford, is a state inmate currently incarcerated at Muskegon Correctional Facility in Muskegon, Michigan. Petitioner was convicted at the conclusion of a Saginaw County Circuit Court jury trial of assault with intent to murder, MICH. COMP. LAWS §750.83; felon in possession of a firearm, MICH. COMP. LAWS §750.224f; and felony firearm, MICH. COMP. LAWS §750.224b. Petitioner was sentenced as a third habitual offender, MICH. COMP. LAWS §769.11 to concurrent sentences of 225 months to thirty years imprisonment for the assault with intent to murder conviction, two to ten years imprisonment for the felon in possession conviction, and a consecutive two year term for the felony-firearm conviction. Petitioner filed a *pro se* petition for habeas corpus under 28 U.S.C. §2254. For the reasons stated below, the Court will deny the petition.

**I. BACKGROUND**

    Defendant's convictions arise from the shooting of Arthur Culbert. Mr. Culbert contracted with Petitioner's business, Home Guard, for window installation at Mr. Culbert's home. (Tr.

11/8/00, at 27-29).  There was a breakdown in the business relationship between the parties due to Mr. Culbert's dissatisfaction with Petitioner's service.  *Id.* at 30-32.  The parties agreed to meet at the Home Guard office to discuss the matter.  *Id.* at 28, 40.  Mr. Culbert brought his friend Doris Brooks with him to the meeting.  After arriving at the Home Guard store, Mr. Culbert parked his vehicle in the lot and approached Petitioner who was also in the parking lot.  An altercation ensued between the parties where there was arguing, pushing and shoving, and punches being thrown.  *Id.* at 46-52.

      Petitioner testified that prior to his meeting with Mr. Culbert, he (Mr. Culbert) had been to the office on another occasion and allegedly threatened a store employee, Jack Simpson, due to his dissatisfaction  with the window installation. (Tr. 11/15/00, at 63-64).  Jack Simpson testified that Mr. Culbert came into the store and threatened to blow it up and kill everyone inside.  (Tr. 11/14/00, at 3-4).  Due to these threats, Petitioner testified that he came to the meeting with Mr. Culbert armed with a gun for protection. (Tr. 11/15/00, at 64).

      During the altercation in the parking lot, Petitioner  testified that Mr. Culbert said that he would kill him and then reached into his pocket to retrieve what Petitioner thought to be weapon.  *Id.*  at 66, 94-95.  Because Petitioner believed that Mr. Culbert was going to shoot him, Petitioner shot at Mr. Culbert three to four times.  *Id.* at 69.  One of the bullets struck Mr. Culbert in the neck.  Petitioner then left the scene and threw the gun he used to shoot Mr. Culbert out of the window . Mr. Culbert was not armed.    (Tr. 11/8/00, at 60). Ms. Brooks and Mr. Culbert were able to make it inside the Home Guard office in order to get help. (Tr. 11/9/00, at 14-16).   One of the employees called 911 and Mr. Culbert was rushed to the hospital where he underwent surgery.  (Tr. 11/8/00, at 57, 59).  Although Mr. Culbert survived he has suffered permanent injuries .  *Id.*  at 60.

Mr. Culbert testified that after the altercation, he was in the process of leaving the scene and was walking back to his truck, when he heard shots, one of them hitting him in the neck. *Id.* at 54-55. Next to Home Guard is "Tony's Restaurant" where certain employees and customers witnessed from a distance what transpired between Petitioner and Mr. Culbert. Their cumulative testimony confirms that Mr. Culbert was not armed and that he was in the process of leaving the scene just before he was shot by Petitioner.

Petitioner filed an appeal of right and raised the following claims:

> I. Mr. Crawford's convictions for assault with intent to murder and felony firearm stand in violation of his state and federal due process rights where they are not supported by evidence sufficient to establish his guilt beyond a reasonable doubt. The prosecutor failed to sustain his burden to show that the shooting was not legally justified LE committed in self-defense or not legally mitigated LE committed in the heat of passion.
>
> II. Mr. Crawford was denied his state and federal constitutional rights to the effective assistance of counsel at sentencing where counsel failed to object to the misscoring of Offense Variable 6. Offense Variable 6 should not have been considered and scored at all where it was outside the purview of the version of MCL 777.22 that applies to his case. Alternatively, if Offense Variable 6 was applicable, it should have been scored at zero points [by] the terms of MCL 777.36, and trial counsel should have objected. Mr. Crawford must be resentenced.
>
> III. Where the trial court denied Mr. Crawford's request for a forensic center evaluation or funds for an expert to perform a forensic evaluation, Mr. Crawford was deprived of his due process right to an individualized sentence and a sentence based on accurate information.
>
> IV. Mr. Crawford's conviction for both felony-firearm and felon in possession of a weapon violated his state and federal constitutional right to be free from jeopardy.

Petitioner also filed a motion for remand raising the issue of whether trial counsel was ineffective for failing to object to the scoring of Offense Variable 6 relative to his sentence. The Michigan Court of Appeals denied the motion. The appellate court subsequently affirmed Petitioner's

convictions and sentences. *People v. Crawford,* No: 232962, 2002 WL 1897673 (Mich. Ct. App. Aug. 16, 2002). Petitioner filed a motion for rehearing which was granted; and the Michigan Court of Appeals' August 16, 2002 opinion was vacated. After a rehearing on the matter, Petitioner's convictions were again affirmed. *People v. Crawford,* No: 232962, 2002 WL 32127279 (Mich. Ct. App. Nov. 8, 2002).

Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court raising the same claims; and the Court stated as follows:

> . . . [i]t appearing to this Court that the case of *People v. Kimble* (Docket No. 122271) is pending on appeal before this Court and that the decision in that case may resolve an issue raised in the present application for leave to appeal, we ORDER the application held in ABEYANCE pending the decision in that case.

*People v. Crawford*, 664 NW2d 217 (2003) (table). An opinion was subsequently issued in *People v. Kimble,* 470 Mich. 305; 684 N.W.2d 669 (2004), and after again considering Petitioner's delayed application, it was denied. *People v. Crawford,* 471 Mich. 883; 688 N.W.2d 503 (2004).

Petitioner now seeks a writ of habeas corpus asserting the same claim presented in the state appellate courts. Respondent has filed an answer to the petition, asserting that Petitioner's claims do not involve an objectively unreasonable application of clearly established Supreme Court law. Petitioner moved to amend his habeas petition by adding three issues for review. The Court denied the motion.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state court decisions. Petitioner is entitled to a writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable

4

>application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law is objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

### III. DISCUSSION

#### A.

**Sufficiency of Evidence**

Petitioner asserts that there was insufficient evidence to sustain his convictions of assault with intent to commit murder and felony-firearm. The Michigan Court of Appeals rejected this argument and ruled as follows:

> Here the evidence clearly established that defendant fired a gun several times at close range at the victim's head. Where the jury was instructed on two lesser offenses (felonious assault and assault with intent to do great bodily harm less than murder), its verdict indicates it was convinced beyond a reasonable doubt that defendant was guilty of the most serious offense.
>
> * * *
>
> Because defendant claimed self-defense, he had to prove that his conduct was in response to an assault directed at the defendant. Defendant failed to present evidence sufficient to convince the trier of fact that the victim initiated an assault. Further, a person generally has a duty to avoid using deadly force when he may safely retreat from the dangerous situation, and a defendant may not use more force than necessary to defend himself from his aggressor. Having been clearly instructed on defendant's theory of self-defense, the jury was justified in concluding that the prosecution proved beyond a reasonable doubt that defendant's conduct was not justified as self-defense.

*Crawford,* 2002 WL 32127279 at *1 (internal citations omitted).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). However, the critical inquiry on review of the sufficiency of the evidence is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979).

This inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnotes omitted) (emphasis in original). This "standard must be applied with explicit references to the substantive elements of the criminal offense as defined by state law." *Id.* at n.16. "[N]ormally, pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent." *Wolfe v. Bock,* 412 F.Supp.2d 657, 681 (E.D. Mich. 2006).

Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F.Supp.2d 629, 647 (E.D.Mich. 2002). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge*, 190 F.Supp.2d 974, 985 (E.D.Mich. 2002) (internal citations omitted). The habeas court does not substitute its own judgment for that of the finder of fact. *See Alder v. Burt,* 240 F.Supp.2d 651, 661-62 (E.D. Mich. 2003). In a federal habeas proceeding, the scope of review of the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock*, 208 F.Supp.2d 780, 794 (E.D. Mich. 2002).

First, Petitioner argues that there was insufficient evidence to sustain a conviction for assault with intent to commit murder. Michigan law provides that "[a]ny person who shall assault another with intent to commit murder requires proof of three elements: (1) an assault , (2) with an actual intent to kill, (3) which, if successful, would make the killing a murder.'" *Warren v. Smith,* 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer,* 229 Mich. App 293, 305; 581 NW2d 753 (1998)). Petitioner also maintains that there is insufficient evidence to support a felony-firearm

7

conviction in this case. "The elements of felony firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Hill,* 433 Mich. 464, 469-71; 446 NW2d 140 (1989).

Given the testimony adduced at trial, the Court finds that the Michigan Court of Appeals' decision to reject Petitioner's insufficiency of evidence argument was not an unreasonable application of clearly established federal law. The record supports that the state court did not unreasonably apply the *Jackson* standard. There was testimony at trial that Petitioner had possession of a firearm, aimed his gun at Mr. Culbert, and fired three to four shots at his chest and head area. Mr. Culbert was shot in the neck; and according to Dr. Richard Louden, who performed emergency surgery upon Mr. Culbert after he had been shot, testified that the gun shot wound was a life threatening injury. (Tr. 11/9/00, at 66-67). The injury came within an inch or two of his carotid artery, which if had been struck, would have caused immediate death. *Id.* at 68. These facts form a sufficient basis to substantiate Petitioner's conviction of assault with intent to commit murder and felony firearm.

To the extent that Petitioner challenges the inferences that the jury drew from the testimony presented at trial and the weight to be accorded certain pieces of evidence, he is not entitled to relief. *Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992). A habeas court must defer to the factfinder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys,* 319 F.3d 780, 788-89 (6th Cir. 2003).

"The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id.* A rational jury could well choose to credit the five eyewitnesses, Mr. Culbert, and the

testimony from law enforcement officials, and to discount or reject outright Petitioner's theory of the case. The court on habeas review must in such cases defer to the jury's finding, made beyond a reasonable doubt, that the more credible witnesses supported the prosecution's charges. *See Matthews,* 319 F.3d at 788-89. Petitioner's claim that his conviction was not supported by constitutionally sufficient evidence is without merit and habeas relief is not warranted.

**B.**

**Failure to Object to Offense Variable 6 Scoring**

Petitioner claims that his attorney was ineffective for failing to object to the presentence investigation reports offense variable scoring. The Michigan Court of Appeals rejected Petitioner's argument stating as follows:

> After careful review of the record, we find defendant was not denied the effective assistance of counsel. Defendant was properly assessed twenty-five points for OV6 because, as the jury found, he had the "unpremeditated intent to kill."
>
> Defendant also argues that counsel should have objected to any scoring of OV6 because M.C.L. §777.22 was amended to include assault with intent to murder *after* the date of the instant offense[1]. While the Ex Post Facto Clause, Const. 1963, art. I, §10, was intended to prevent the Legislature from enacting remedial and procedural statutes effecting substantive matters, our Supreme Court had decidedly found that the legislative sentencing guidelines do not furnish defendants with any substantive rights and do not violate the prohibition against ex post facto laws. Accordingly, any such objection by counsel would have been meritless.

*Crawford,* 2002 WL 32127279, *2 (internal citations omitted).

Under Michigan law, a sentencing court has discretion in determining the number of points to be scored under an offense variable provided that evidence on the record adequately supports a

---

[1] Mich. Comp. Laws §777.22(1) was amended as Petitioner points out to the Court. However, the amendment became effective on October 1, 2000. Petitioner was sentenced on February 26, 2001. Therefore, the amended sentencing statute was in effect at the time of Petitioner's sentencing and applies in this case.

9

particular score. *People v. Hornsby,* 251 Mich. App. 462, 468; 650 NW2d 700 (2002). Since claims of improper scoring of sentencing guidelines are questions of state law, they are generally not cognizable in habeas proceedings. *See Austin v. Jackson,* 213 F.3d 298, 301 (6th Cir. 2000). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). Petitioner has not shown that the Michigan Court of Appeals decision that Offense Variable 6 was properly scored is in error, nor that he was denied fundamental fairness.

While a sentence imposed on the basis of material misinformation of constitutional magnitude may violate due process, *Townsend v. Burke,* 334 U.S. 736, 741 (1948), *Roberts v. United States,* 445 U.S. 552, 556 (1980), the testimony at trial supported a finding that Petitioner shot at Mr. Culbert's head and chest area; Mr. Culbert was unarmed; Mr. Culbert was shot in the neck and very close to the carotid artery; and directly before the shooting Mr. Culbert was trying to retreat from the situation. In light of this testimony, trial counsel cannot be found ineffective for failing to object to the scoring of Offense Variable 6 at twenty-five points[2].

---

[2] Michigan Compiled Laws §777.36 states in pertinent part:

"(1) Offense variable 6 is the offender's intent to kill or injure another individual. Score offense variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(b) The offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result . . . . . . 25 points

(2) All of the following apply to scoring offense variable 6.

(b) Score 10 points if a killing is intentional within the definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent."

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy the standard set forth in *Strickland v. Washington.* 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court sets forth a two-pronged test for determining whether a habeas petitioner received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.* Defendant must prove that there is a reasonable probability, but for counsel's deficient performance, "the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. These standards apply equally to sentencing. *Id.* at 686. Both the performance and prejudice component of the ineffectiveness inquiry are mixed questions of law and fact. *Combs v. Coyle,* 205 F.3d 269, 278 (6th Cir. 2000).

The Michigan Court of Appeals correctly found that in light of the proper scoring of Offense Variable 6, Petitioner would remain in the same Offense Variable level and could not establish the requisite level of prejudice. As such, Petitioner has not shown that, but for counsel's failure to object to the scoring of the challenged variable, Petitioner would have received a lesser sentence.

## C.
### Forensic Evaluation

Petitioner asserts that his due process rights were violated when he was denied a forensic evaluation prior to being sentenced. It is his position that the trial court sentenced Petitioner without taking into consideration his mental capacity and other accurate information that would have been realized during a competency exam and would have led to an individualized sentence being imposed. The Michigan Court of Appeals disagreed:

> Defendant must first meet three requirements to merit review of this issue: (1) he must have made a timely request to the trial court for expert assistance; (2) the trial court must have improperly denied his request; and (3) lacking expert assistance, defendant must have been forced to proceed to trial at a fundamentally unfair disadvantage. Defendant cannot satisfy these prerequisites. . . . [D]efendant did not make a timely request; defendant's first request; was made post-trial at a scheduled sentencing hearing. Defendant's untimely request-rather than improperly denied - was properly denied by the trial court; any intention to defend on the basis of insanity required filing a thirty-day written pretrial notice. Further, defendant suffered no fundamental unfairness as a result of the court's decision because defendant was not prevented from presenting defense.

*Crawford,* No: 232962, 2002 WL 32127279, *2 (internal citations omitted).

"A petitioner raising a substantial claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence. *Hastings v. Yukins,* 194 F.Supp.2d. 659, 671 ( E.D. Mich. 2002). "To succeed in stating a substantive incompetency claim, a petition must present evidence that creates a 'real, substantial, and legitimate doubt' as to his or her competency to stand trial.'" *Id.*

In this case, the extent of Petitioner's offer of proof relative to his emotional and mental state is that he had been treated for depression in the past. This general statement does not demonstrate that he should be found less culpable for the shooting of Arthur Culbert, nor that he was unable to participate in his defense prior to and during trial. Petitioner's past treatment for depression does not prompt the need for a forensic evaluation. The record is barren of any evidence which would

indicate that a competency hearing would be necessary in this case.

Since Petitioner has no constitutional right to an individualized sentence, no constitutional error would occur if the state trial court failed to consider mitigating evidence, relative to his competency, on his behalf at sentencing. *Id.* at 673. Accordingly, no habeas relief is warranted on this claim.

### D.

### Double Jeopardy

Finally, Petitioner asserts that his convictions of both felony firearm and for being a felon in possession constitute a double jeopardy violation, warranting habeas relief. The Michigan Court of Appeals rejected Petitioner's argument and held as follows:

> This Court recently upheld a defendant's conviction for felony-firearm where the underlying felony was felon in possession of a firearm . . . [T]his Court expressly rejected defendant's argument here on appeal-that because the felon in possession statute was enacted after the effective date of the four exceptions to felony-firearm in M.C.L. §750.227b, there exists no conclusive proof that the Legislature intended multiple punishments for these two specific crimes. Specifically . . . [it is] noted that the fact that the felon in possession statute was enacted after the four exceptions were included in the felony-firearm statute indicated that the Legislature considered the impact of the felony-firearm law on M.C.L. §750.224f (felon in possession statute) and decided against changing M.C.L. §750.227b to except it.

*Crawford,* 2002 WL 32127279, *3 (internal citations omitted).

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend V. The Double Jeopardy Clause provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. These protections

stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley,* 510 U.S. 222, 229 (1994) (citing *United States v. Wilson,* 420 U.S. 332, 339 (1975)).

However, in the context of multiple punishments, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses. As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . ., the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent. *Ohio v. Johnson,* 467 U.S. 493, 499 (1984). "[E]ven if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner,* 793 F.2d 1014,1015 (9th Cir. 1986). When "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter,* 459 U.S. 359, 368-69 (1983). In determining whether the Michigan legislature intended to authorize separate, cumulative punishments in the circumstances present here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments[.]" *Brimmage,* 793 F.2d at 1015.

The statute at issue is the felony firearm statute[3]. The Michigan Supreme Court, in light of

---

[3]"A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223 [unlawful sale of a firearm], section 227[carrying a concealed weapon], 227a [unlawful possession of a firearm by a licensee] or 230 [alternation of identifying marks on a firearm], is guilty of a felony, and shall be imprisoned for 2 years. MICH. COMP. LAWS §750.227b(1).

the language of this section and the legislative history, has concluded that "the Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony-firearm charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." *People v. Mitchell,* 456 Mich. 693, 698; 575 NW2d 283 (1998). In *People v. Calloway,* 469 Mich. 448; 671 NW2d 733 (2003), the Michigan Supreme Court followed *Mitchell* and specifically ruled that "[b]ecause the felon in possession charge is not one of the felony exceptions in the statute, it is clear that defendant could constitutionally be given cumulative punishments when charged and convicted of both felon in possession, M.C.L. §750.224f, and felony-firearm, M.C.L. §750.227b." *Id.* at 452.

Given the foregoing cases, the state court's denial of relief is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law. Whether punishments imposed are constitutional is essentially a question of legislative intent, and a state court's determination that a state legislature intended multiple punishments is binding on habeas corpus review. *See Banner v. Davis,* 886 F.2d 777, 780 (6th Cir. 1989). The Michigan courts have concluded that convictions for felon in possession and felony firearm, and carrying a concealed weapon (predicated on a felon in possession charge) do not violate double jeopardy. Because this determination is binding on federal habeas review, Petitioner's double jeopardy claim lacks merit. *See Rodgers v. Bock,* 49 Fed. Appx. 596, 597 (6th Cir. 2002).

Further, even if this Court were free to independently determine whether the Michigan legislature intended to authorize separate punishments in the circumstances present here, the result would be the same. The Court concludes that the Michigan legislature intended to impose multiple punishments in the circumstances present here such that Petitioner's convictions do not violate

15

federal double jeopardy protections.  Habeas relief is not warranted on this claim.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

        S/Denise Page Hood
        Denise Page Hood
        United States District Judge

Dated:  March 25, 2009

I hereby certify that a copy of the foregoing document was served upon Kevin B. Crawford, Reg. No. 201697, Muskegon Correctional Facility, 2400 S. Sheridan Rd., Muskegon, MI 49442 and counsel of record on March 25, 2009, by electronic and/or ordinary mail.

        S/William F. Lewis
        Case Manager